# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

     v.                                              :  CRIMINAL NO. 16-276

BRENDEN SMITH                        :

## ORDER

AND NOW, this          day of          , 2024, upon consideration of the Defendant's

Motion for Early Termination of Supervised Release, and the Government's response thereto, it

is hereby

## ORDERED

that the Defendant's Motion for Early Termination of Supervised Release is denied.

BY THE COURT:

_____

**HONORABLE TIMOTHY J. SAVAGE**
**United States District Judge**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 16-276 |
| v. | : | |
| BRENDEN SMITH | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### FOR EARLY TERMINATION OF SUPERVISED RELEASE

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Amanda McCool, Assistant United States Attorney, respectfully submit this Opposition to Defendant's Motion for Early Termination of Supervised Release. The defendant seeks termination of supervised release after serving only seven years of the thirty-year period imposed by the Court. He is barred from doing so by the provisions of his plea agreement, where he waived claims to such relief. The sentence of supervised release was necessary and appropriate, and this sentence should not be altered. The motion should be denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Circumstances of Defendant's Child Sexual Exploitation Crimes

The defendant was charged in a one count Information arising from his knowing possession of images of minors engaged in sexually explicit conduct produced using minors engaged in such conduct. On at least two occasions, February 25, 2015 and March 4, 2015, the defendant accessed "PlayPen," a child pornography site residing as a hidden service on the Tor network. During these visits, he accessed and downloaded images of child pornography,

including images of prepubescent minors and minors who had not attained 12 years of age.

On February 25, 2015, Smith logged on to the PlayPen website under the username "racecar12" from an IP address 68.83.167.138 and entered a password to access the website. Once he entered the website, Smith accessed a post entitled "Best of Girls on Cams!"  Among other images, the images viewed on this post included two prepubescent females naked in a bathtub, with one exposing her genitals to the camera.  The other image was of a prepubescent female with her exposed buttocks facing the camera.

Also on February 25, 2015, the defendant accessed a post entitled "Lexie SC/HC – With ALL Pics – I have found!"  On this post, the defendant viewed, among other images, one contact sheet with 77 images of a prepubescent female depicting the lewd and lascivious exhibition of her genitals.   On the same day, the defendant also accessed another post on "PlayPen" entitled "11yo Luiza's webcam – nice clit!"  that contained a link to a contact sheet with 30 images depicting what appeared to be a prepubescent female exposing her vagina to the camera.

On March 4, 2015, the defendant, again using the handle "racecar12," accessed a post on PlayPen entitled "Chelsea 9yo" containing a link to a contact sheet with 16 images depicting what appeared to be a prepubescent girl exposing her vagina to the camera.

The defendant originally registered an account on PlayPen on October 25, 2014. Between the dates October 25, 2014 and March 4, 2015, Smith had been actively logged into PlayPen for a total of 48 hours. In total, Smith knowingly possessed approximately 14 videos and 161 still images, each of which was a visual depiction of one or more minors engaged in sexually explicit conduct, produced using minors engaged in such conduct.  Furthermore, the defendant knew when he possessed these images and videos that they contained depictions of minors engaged in sexually explicit conduct produced using minors engaged in such conduct.

On August 6, 2015, a federal search warrant was obtained to search and seize property from the defendant's residence located at 6 Village Way, Plymouth Meeting, Pennsylvania.  The warrant was executed on August 13, 2015.  During the search of the property, the defendant voluntarily spoke to FBI agents about his activities searching and downloading child pornography on the internet.  He told FBI agents that he used the username "racecar12" on several websites.  He also admitted that he downloaded the Tor browser to his laptop.

B.    Conviction

On July 8, 2016, an Information was filed charging the defendant with one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On September 21, 2016, the defendant entered a plea of guilty to that charge. He was sentenced on January 18, 2017, to 1 day of incarceration, followed by a 30-year period of supervised release.  The term of incarceration represented a downward variance from his calculated sentencing Guideline range of 78-97 months. The 30-year term of supervised release also represented a downward variance from the recommended maximum term of lifetime supervision. *See* U.S.S.G. § 5D1.2(b)(2) and (c), and App. Note 1.

Based on this conviction, the defendant is also required to register pursuant to the Sexual Offender Registration and Notification Act ("SORNA").  He is a Tier I offender and must comply with registration requirements for fifteen years, or until January 18, 2032.

The defendant did not appeal his sentence.  The defendant has served seven years of his supervised release and has twenty-three years remaining.  Now, in violation of his plea agreement, he seeks to change that sentence by seeking to shorten his term of supervised release. The Court's sentence should remain undisturbed.

II.     **THE PLEA AGREEMENT BARS THE RELIEF SOUGHT**

The Third Circuit has made clear that the appellate/collateral attack waiver provisions that this defendant agreed to in his written plea agreement cover this very circumstance, and the defendant is now proscribed from asking this Court to change his sentence.

In *United States v. Damon,* 933 F.3d 269 (3d Cir. 2019), the Court noted that "[w]aivers in plea agreements are neither new nor unusual, and we have long enforced their terms." *Id*. at 272. Damon pled guilty pursuant to a plea agreement where he waived appeals or collateral attacks on his sentence. He did not dispute that the plea agreement in fact contained the waiver provisions. Rather, Damon argued that "sentence" referred only to the term of imprisonment, and did not apply to a later request to shorten his term of supervised release. *Id.* Utilizing the "well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards," *id.* at 273 (citing *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)), the Court found that the term "sentence" to be both unambiguous and to include supervised release, stating: "The ordinary meaning of 'sentence' can only reasonably be read to include all forms of punishment or penalties imposed on a defendant. By extension, Damon's 'sentence' must be read to include the term of his supervised release, bringing Damon's challenge within the scope of the bargained-for waiver." *Damon*, 933 F.3d at 273.

The Third Circuit thus held that a petition for early termination was a "challenge" to the sentence that was waived by the clear language of the plea agreement and that the defendant

"cannot now challenge the term of his supervised release by reframing it as a post-sentence modification." *Id*. At 275.

The waiver in this case similarly applies to any post-conviction challenge to a "sentence," and thus the waiver applies to a motion for termination of supervised release. The only remaining question is whether the waiver is enforceable. It plainly is.

The Third Circuit has held that three factors must be considered: "(1) whether the waiver of the right to appeal her sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; i.e., what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice." *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (internal quotation marks omitted; quoting *United States v. Jackson*, 523 F.3d 234, 243-44 (3d Cir. 2008)). In this case, consideration of all of the elements dictates enforcement of the waiver and summary denial of the defendant's motion.

A.    The Waiver Was Knowing and Voluntary

Upon a motion for summary affirmance based on a plea agreement waiver, this Court's first task is to assure that the waiver was entered knowingly and voluntarily. *See United States v. Mabry*, 536 F.3d 231, 237-38 (3d Cir. 2008), *abrogated on other grounds, Garza v. Idaho,* 139 S. Ct. 738 (2019).[1] The question is whether "the district court 'inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms of any plea-agreement provision

---

[1] *Garza* held that an attorney provides ineffective assistance if he does not comply with a defendant's direction to file a notice of appeal, even if the defendant entered an appellate waiver. That situation is not at issue here.

waiving the right to appeal or to collaterally attack the sentence' as Federal Rule of Criminal

Procedure 11(b)(1)(N) requires." *Id.* at 239 (bracketed material and ellipsis in original).

Here, the plea was knowing and voluntary, and indeed the defendant has not claimed

otherwise.  The Court addressed the waiver with the defendant, and also assured more broadly

that the defendant was competent, that the plea agreement was explained to the defendant, and

that the defendant had a full opportunity to discuss the agreement with counsel and make an

informed decision.

**B.**     No Exception to the Waiver Applies

None of the narrow exceptions in the waiver applies in this case. Specifically, the plea

agreement permits the presentation only of claims that a sentence exceeded the statutory

maximum on any count, that the Court imposed an upward departure in the guideline calculation,

or that the Court imposed an upward variance from the guideline range. As explained earlier,

none of those circumstances occurred.[2]

**C.**     This Case Does Not Present a Miscarriage of Justice

Because the waiver was entered knowingly and voluntarily, it must be enforced in the

absence of a miscarriage of justice. In *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001), the

Court held that waivers of appeal are enforceable, but observed that "[t]here may be an unusual

---

[2] The agreement also permits presentation of claims of ineffective assistance of counsel. However, under settled law, such a claim should be presented in a timely collateral petition under 28 U.S.C. § 2255, which the defendant did not do. *See, e.g., Massaro v. United States,* 538 U.S. 500 (2003); *United States v. Thornton,* 327 F.3d 268, 271-72 (3d Cir. 2003).

circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." *Id.* at 562.

There was no miscarriage of justice in this case. The Court in *Khattak* did not provide a definitive list of situations which amount to a "miscarriage of justice." It observed that other appellate courts have suggested that only extraordinary situations would suffice. *See, e.g.*, *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000) (there may be a miscarriage of justice if the sentence was "1) imposed in excess of the maximum penalty provided by law or 2) based on a constitutionally impermissible factor such as race."); *United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999) (may be miscarriage of justice if the plea agreement was the product of ineffective assistance of counsel). *Khattak* embraced the view of the First Circuit, that a reviewing court should evaluate appellate waivers case-by-case, considering the error claimed by the defendant and such factors as "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." 273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)).

It is apparent that the "miscarriage of justice" exception is quite narrow. It "will be applied sparingly and without undue generosity," *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)), only where "manifest injustice" would result by enforcing the appellate waiver, *Gwinnett*, 483 F.3d at 206.

Simply because an issue is meritorious is not sufficient. Adopting the view of other Circuits, this

Court stated in *Khattak*:

> [B]y waiving the right to appeal, a defendant necessarily waives the opportunity to
> challenge the sentence imposed, regardless of the merits. As the Court of Appeals for the
> Eleventh Circuit explained:
>
>> A waiver of the right to appeal includes a waiver of the right to appeal difficult or
>> debatable legal issues - indeed, it includes a waiver of the right to appeal blatant
>> error. Waiver would be nearly meaningless if it included only those appeals that
>> border on the frivolous . . . . While it may appear unjust to allow criminal
>> defendants to bargain away meritorious appeals, such is the necessary
>> consequence of a system in which the right to appeal may be freely traded.
>
> [*United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)]; *see also United States v.
> Wenger*, 58 F.3d 280, 282 (7th Cir.1995) ("Defendants who appeal from sentences
> following plea agreements always point to unanticipated and unwelcome developments. .
> . . To say that a waiver of appeal is effective if and only if the defendant lacks grounds . .
> . is to say that waivers will not be honored.").

*Khattak*, 273 F.3d at 561-62. *See also United States v. Castro*, 704 F.3d 125, 138 (3d Cir. 2013)

(with regard to a claim of insufficiency of the evidence, a defendant establishes a miscarriage of

justice allowing the claim to be considered only if "the record is entirely devoid of evidence that

he committed each element" of the offense); *United States v. Schweitzer*, 454 F.3d 197, 205 (3d

Cir. 2006) (applying waiver to preclude appeal of challenge to allegations in indictment).

Notably, the waiver precludes ordinary claims of sentencing error. *See Castro*, 704 F.3d

at 141-42 ("It appears instead that a district court's arguably erroneous calculation of a guideline

range 'is precisely the kind of "garden variety" claim of error contemplated by [an] appellate

waiver.'") (quoting *Sotirion v. United States*, 617 F.3d 27, 38 (1st Cir. 2010); *United States v.

Lockett*, 406 F.3d 207, 212-14 (3d Cir. 2005) (meritorious sentencing argument under *Booker* is

not a basis for the defendant to evade his appellate waiver); *United States v. Jackson*, 523 F.3d

234, 244 (3d Cir. 2008) ("it will be a rare and unusual situation when claims of an unreasonable

sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice.");[3] *United States v. Banks,* 743 F.3d 56, 58-59 (3d Cir. 2014) (where both prison terms were within the ranges specified in the plea agreement, and the entire sentence was well below the statutory maximum, there is no foundation to conclude that the sentence constituted a miscarriage of justice permitting abrogation of the appellate waiver); *United States v. Perez*, 514 F.3d 296, 298 (3d Cir. 2007) (enforcing waiver of right to appeal restitution order, as that was a term of sentencing regarding which the defendant waived the right to appeal).

In this case as well, the defendant has not presented any issue falling within the narrow miscarriage of justice exception. The defendant pled guilty to and admitted the charge, and the district court then imposed a sentence below the advisory guideline range (a sentence which may be presumed reasonable, *Rita v. United States*, 551 U.S. 338, 347 (2007)), and did not take any significant action which either party failed to anticipate or address.

## III.   EARLY TERMINATION IS NOT WARRANTED IN ANY EVENT

For the reasons set forth above, the motion should be summarily denied, as in *Damon*, on the basis of the defendant's waiver. For purposes of completeness, we add that the motion fails on the merits in any event.

Title 18 U.S.C. § 3583(e) authorizes the Court to grant early termination of supervised release only in certain, specified circumstances.  That section provides:

> The court may, after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) – (1)

---

[3]  In *Jackson*, the Court rested its view in part on the fact that the Supreme Court, in *Gall v. United States*, 552 U.S. 38 (2007), made clear that sentencing decisions of a district court must be afforded considerable deference on appeal; thus, it is difficult to conceive of a case in which such a discretionary decision would cause a miscarriage of justice. In *Jackson*, where the defendant only sought to appeal the reasonableness of his sentence, this Court concluded that the "case obviously does not present the 'unusual circumstances' we contemplated in *Khattak*." *Jackson*, 523 F.3d at 244.

> terminate a term of supervised release and discharge the defendant
> released at any time after the expiration of one year of supervised release,
> pursuant to the provisions of the Federal Rules of Criminal Procedure
> relating to the modification of probation, if it is satisfied that such action is
> warranted by the conduct of the defendant released and the interest of
> justice[.]

18 U.S.C. § 3583(e)[4]. It is the defendant's burden to demonstrate that the circumstances warrant early termination. *United States v. Rasco*, 2000 WL 45438, at *3 (S.D.N.Y. 2000) ("Neither the statute nor the relevant case law places an affirmative obligation upon the government to make a showing of compelling penal need before a defendant will be required to complete a validly imposed term of supervised release. If the defendant desires to have that period shortened he must show that the circumstances warrant it, not that the government cannot prove otherwise").

The defendant has served only seven years of his thirty-year term of supervised release imposed by this Court. The defendant received a sentence substantially below the guidelines, which called for 78-97 months of incarceration. This Court determined that a lengthy term of supervised release was more appropriate for this defendant, and termination after serving only seven years fails to appreciate the gravity of the defendant's crimes.

The defendant seeks early termination because he seeks "greater freedom" to travel to China to visit his wife and child. The terms of the defendant's supervised release do not preclude him from traveling to China. The defendant would need to seek permission from the

---

4 The factors to be considered are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . .(B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines (5) any pertinent policy statement. . .; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (C), (D), (a)(4), (a)(5), (a)(6), and (a)(7).

Court prior to international travel.   The defendant is also required to register pursuant to SORNA.  He would need to inform registry officials of any intended travel outside of the United States, regardless of his status on supervised release.  Therefore, even if his supervised release was terminated, he would still not have complete freedom to travel internationally.

The defendant further argues he is entitled to early termination because he has completed "vigorous" and "extensive" psychological therapy to address his problems.  In his motion, the defendant mentions four separate therapy programs he has attended.  He has failed to produce any documentation of three of the four referenced programs, even after request by the government.

The decision to grant early termination of supervised release rests within the sound discretion of the court.  *See Rasco*, 2000 WL 45438, at *3.  Early termination, however, is "not warranted as a matter of course." *United States v. Herrera*, 1998 WL 684471, at *2 (S.D.N.Y. 1998).  Rather, "[i]t may be justified 'occasionally' in cases of new or unforeseen circumstances." *Id.* (*citing United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).  The Second Circuit explained in *Lussier* that early termination of supervised release should not be casually granted, but is warranted only in cases where, in the opinion of the sentencing judge, the defendant shows changed circumstances sufficient to warrant relief.  *See Id. at 36* (concluding that early termination is reserved for "occasional[]" cases of "exceptionally good behavior").

As court after court has held, where the defendant presents no new or exceptional circumstances, early termination is not warranted.  See, e.g., *United States v. Williams*, 2006 WL 618849, at *1 (E.D. Pa. 2006) ("early termination of supervised release should be ordered only in extraordinary circumstances"); *United States v. Guilliatt,* 2005 WL 589354, at *1 ("early termination of probation should be ordered only in extraordinary circumstances"); *United States*

*v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003) ("While Caruso has generally complied with the conditions of his probation, there is nothing contained in the record before me of an unusual or extraordinary nature that would warrant the early termination of his probationary sentence"); *United States v. Kay*, 283 Fed.Appx. 944 at \*\*2 (3d Cir. 2008) (district court does not abuse its wide discretion when it requires a defendant to demonstrate sufficiently compelling circumstances to warrant early termination); *United States v. Martin*, 1992 WL 178585, at \*1 (S.D.N.Y. 1992) ("The factors that led to imposition of the original sentence, however, remain unchanged. . . This court does not find, nor does defendant even offer, the existence of new circumstances that merit a modification of the original sentence").

The decisions above demonstrate that full compliance with the terms of supervision is expected and does not justify early termination.  Indeed, if simple compliance with the terms of the Court's supervision were sufficient to justify early termination, "the exception would swallow the rule."  *Rasco*, 2000 WL 45438, at \*2; *See also United States v. Guilliatt*, 2005 WL 589354, at \*1 (E.D.Pa. 2005) ("The conduct cited by defendant in support of his Petition is commendable. However, it is nothing more than what is required under the terms of defendant's probation."); *United States v. Paterno*, 2002 WL 1065682, at \*2 (D.N.J. 2002) ("Most Courts addressing this issue have found that compliance with the terms of supervised release and with the law alone are not enough to warrant early termination."); *United States. v. Lohman*, 2007 WL 1430282, at \*1 (E.D. Wisc. 2007) ("The conduct of the defendant necessary to justify early termination must include more than simply following the rules of supervision."); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (finding that defendant's compliance "with the terms of his supervision is commendable, but ultimately that is what is expected of him."); *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (flawless prison record and compliance with

the terms of supervision are "commendable" but do not constitute the "exceptional behavior" contemplated to warrant early termination); *Rasco*, 2000 WL 45438 at *3 ("While Rasco's good behavior in prison and on supervised release is laudable, I am not satisfied that his conduct has been so unusual as to merit the early termination of his supervised release"); *Herrera*, 1998 WL 684471 at *2 ("Although Herrera seems to have adjusted well to probation, there are no new or exceptional circumstances sufficient to warrant a termination of his probation term").

In this case, the defendant's underlying crimes are extremely serious. He involved himself in the underworld of child sexual exploitation. In lieu of any significant sentence of incarceration, the Court deemed a lengthy period of supervision appropriate for this defendant. While the government appreciates the defendant's desire to reunite with his wife and child, supervised release does not prevent him from doing so.

Nor does the defendant's post-release conduct provide the Court with sufficient reason to justify early termination of his supervision. He complied with the terms of supervision, as he was mandated by this Court to do. There is no assertion of extraordinary conduct or changed circumstances that make his supervision unduly burdensome or harsh. In the absence of a showing that termination is justified by extraordinary circumstances, the defendant's request for early termination of supervised release should be denied. *See United States v. Abuhouran*, 2006 WL 1805546 (Pollak, J.) (holding that early termination of supervised release was not warranted despite the defendant's bald assertions that supervised release was preventing her from obtaining a license, job, and health care); *Guilliatt*, 2005 WL 589354, at *1 ("Defendant has not come forward with any evidence of extraordinary conduct which might warrant early termination of probation."). The defendant should serve the balance of the term that was originally imposed by this Court.

**IV.**     **CONCLUSION**

For these reasons, the government respectfully requests that this Court deny defendant's

Motion for Early Termination of Supervision.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s/ Amanda McCool*
AMANDA McCOOL
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Opposition to Petition for Early Termination of

Supervision was served by mail and e-filing on the following:

Hope Lefeber
1500 JFK Boulevard, Suite 1205
Two Penn Center
Philadelphia, PA 19106
hope@hopelefeber.com

AMANDA McCOOL
Assistant United States Attorney

Date:  March 6, 2024